IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WALTER W. ALLEN,

       Plaintiff,

v.                                        Civil Action No. 2:03-CV-32

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
       Defendant.

## **MEMORANDUM, OPINION and REPORT AND RECOMMENDATION**
## **SOCIAL SECURITY**

### **I. Introduction**

A.    Background

Plaintiff, Walter W. Allen, (Claimant), filed his Complaint on May 2, 2003 seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1] Commissioner filed her Answer on August 18, 2004.[2] Claimant filed his Motion for Summary Judgment on September 20, 2004.[3] Commissioner filed her Motion for Summary Judgment and Brief in Support Thereof on October 18, 2004.[4]

B.    The Pleadings

        1.    Claimant's Motion for Summary Judgment.

        2.    Commissioner's Motion for Summary Judgment and Brief in Support Thereof.

---

[1] Docket No. 1.

[2] Docket No. 12.

[3] Docket No. 13.

[4] Docket Nos. 15 and 16.

C.  Recommendation

1. I recommend that Claimant's Motion for Summary Judgment be DENIED and Commissioner's Motion for Summary Judgment be GRANTED. The ALJ was substantially justified in his decision. Specifically, the ALJ did not consider evidence outside the record and, therefore, a remand is not required.

## II. Facts

A.  Procedural History

Claimant first filed for Disability Insurance Benefits (DIB) and Supplemental Security Income Payments (SSI) in February 1990. The application was denied. Claimant filed his second application for benefits in July 1992. The claim was ultimately approved and benefits began in January 1993. In September 2000, Claimant's benefits were terminated because it was determined that drug addiction and/or alcoholism were contributing factors to his disability.

On November 6, 2000, Claimant filed his third application for benefits alleging disability since July 6, 1992. The application was denied initially and on reconsideration. A hearing was held on June 12, 2002 before an ALJ and a subsequent hearing was held on September 4, 2002. The ALJ's decision dated September 17, 2002 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on February 26, 2003. This action was filed and proceeded as set forth above.

B.  Personal History

Claimant was 42 years old on the date of the June 12, 2002 hearing before the ALJ. Claimant has a ninth grade education and past relevant work experience as a sawmill laborer.

C.  Medical History

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability July 6, 1992 - September 17, 2002 :

**Residual Physical Functional Capacity Assessment, Tr. 138-145**
PRIMARY DIAGNOSIS:           Chronic back pain.
Exertional Limitations: Occasionally 100 lbs., frequently 50 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull, sit 6 of 8 hours, unlimited push and pull.
POSTURAL LIMITATIONS:        All frequently except occasionally balancing.
MANIPULATIVE LIMITATIONS:  Unlimited.
VISUAL LIMITATIONS:          None established.
COMMUNICATIVE LIMITATIONS: None established.
ENVIRONMENTAL LIABILITIES:    Unlimited.

**Psychiatric Review Technique, Tr. 146-154**
Impairment not severe, substance addiction order present.
"B" Criteria, no restrictions of daily living or difficulties social functioning, seldom deficiencies of concentration, never episodes of deterioration.

**Pochontas Memorial Hospital, 7/20/92, Tr. 156-157**
- Final Diagnosis: Acute alcoholic withdrawal seizures, delerium tremens, subdural hygroma, alcoholic hepatitis, fever of unknown etiology, acute pancreatitis and inappropriate ADH syndrome.

**7/17/92, Tr. 228**
X-Ray, left subdural hematoma

**7/6/92, Tr. 229**
X-Ray, normal chest

**7/9/92, Tr. 230**
X-ray, cholelithiasis

**7/8/92, Tr. 231**
X-ray, normal lumbo sacral spine

**WVU Hospitals**
**7/25/92, Tr. 233**
Chronic subdural hematoma

**7/20/92, Tr. 235**
Negative portable chest examination

**Joseph L. Voelker, M.D., 7/27/92, Tr. 239**

3

- Past history: chronic alcohol abuse.
- Left chronic subdural hematoma.

**Residual Physical Functional Capacity Assessment**, 5/28/92, Tr. 244-251
PRIMARY DIAGNOSIS: Chronic alcohol abuse.
SECONDARY DIAGNOSIS: Illegible.
EXERTIONAL LIMITATIONS: Occasionally 50 lbs., frequently 25 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
POSTURAL LIMITATIONS: All occasionally.
MANIPULATIVE LIMITATIONS: None established.
VISUAL LIMITATIONS: None established.
COMMUNICATIVE LIMITATIONS: None established.
ENVIRONMENTAL LIMITATIONS: Unlimited except avoid concentrated exposure to heights.

**Psychiatric Review Technique, 9/30/92, Tr. 255-264**
- Residual Functional Capacity Assessment necessary.
- Organic Mental Disorder, S/P subdural.
- Significantly subaverage general intellectual functioning.
- Borderline Substance Addiction Disorder present.
- Slight restrictions daily living and difficulties in social functioning. Often deficiencies in concentrated [illegible]. Once or twice episodes of deterioration.

**Thomas E. Andrews, Ph.D., Tr. 265**
I.Q.   Verbal 73   Performance 78   Full Scale 74
- Borderline mental retardation.
- Alcohol abuse in remission.

**Mental Residual Functional Capacity Assessment, 12/11/92, Tr. 276**
- Not significantly limited.   14 of 20 categories.
- Moderately limited.   6 of 20 categories.

**Pochontas Memorial Hospital**
- X-ray normal left knee, 10/27/92, Tr. 284.
- X-ray old right thumb injury, 4/19/90, Tr. 285.

**Ian D. Archibald, M.D., 2/8/93, Tr. 288**
- Medical meniscus tear of the left knee.

**Residual Physical Functional Capacity Assessment, 3/4/93, Tr. 289-296**
PRIMARY DIAGNOSIS:
- Chronic alcoholism.
- [illegible] back strain.

SECONDARY DIAGNOSIS:

4

- Subdural hematoma.
- Liver disease.

EXERTIONAL LIMITATIONS: 50 lbs. occasionally, 25 lbs. frequently, stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
POSTURAL LIMITATIONS: All occasionally.
MANIPULATIVE LIMITATIONS: None established.
VISUAL LIMITATIONS: None established.
COMMUNICATIVE LIMITATIONS: None established.
ENVIRONMENTAL Limitations: Unlimited, except avoid concentrated exposure to hazards.

**Mental Residual Functional Capacity Assessment, Tr. 297-300**
- No evidence of limitation in 18 of 20 categories.
- Moderately limited in 2 of 20 categories.

**Psychiatric Review Technique, 3/1/93, Tr. 301**
- Residual Functional Capacity Assessment necessary.
- Organic Mental Disorder.
- Mental retardation and autism.
- Substance Addiction Disorder.
- Slight restrictions daily living, no difficulties in social functioning or episodes of deterioration, seldom deficiencies of concentration.

**William R. Sharpe Hospital, 6/3/88, Tr. 435**
- Chemical dependence, alcohol, and marijuana.

**Greenbrier Valley Medical Center, 12/11/99, Tr. 439**
- Cervical lymphodenopathy of uncertain etiology.
- Chest x-ray, normal study.

**Ray O. Jones, D.O., 1/4/00, Tr. 451**
- Left submandibular salivary gland with a Wharton's duct [illegilbe].

**Sunny S. Bell, M.A., Tr. 460**
I.Q.   Verbal 63     Performance 63     Full Scale 60
- Substance Abuse History.

**Rodolfo Gobunsuy, M.D., 6/8/00, Tr. 465**
- Mr. Allen has alcoholism, as he admitted. He was told before that he has liver damage, but examination of the abdomen is benign. He has no symptoms of cirrhosis.
- He has nonspecific knee pains.

**Eli Rubenstein, 1/11/01, Tr. 470**
- Normal knee.

5

- Normal lumbar spine.

**Rodolfo Gobunsuy, M.D., 1/13/01**
- Mr. Allen has pain in his back and knees. The range of motion of his lower back is satisfactory. He had no radicular symptoms down his arms or legs. He walks steadily without antalgia. He complains of pain in the knees off and on, and during this examination there is none. However, he had difficulty squatting. There is no indication that he has significant degenerative joint disease in his knees.

**Physical Residual Functional Capacity Assessment, 2/2/01, Tr. 477-484**
- PRIMARY DIAGNOSIS: Back pain.
- Nothing marked except the severity or duration of the symptoms is disproportionate to the inspected severity plus "Claimant has back, knee and shoulder pain. However, his x-rays were normal along with the ROM studies. He doesn't require pain meds, either. Impairment is considered to be non-[illegible]."

**Physical Residual Functional Capacity Assessment, 5/24/01, Tr. 485-492**
- Claimant not credible.

D.  Testimonial Evidence

### 1. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 514-15):

Q	Let's presume a person who has borderline IQ, and no principal other mental impairments. Borderline IQ is verbal 73, performance 78, [INAUDIBLE] is 74, so that limits the Claimant to simple, routine-type work. And, presume with those limitations, we have a hypothetical person same age, education, work history as the Claimant. Are there any jobs that exist in significant numbers in the national economy?

A	Yes, sir.

Q	[INAUDIBLE]?

A	Yes, sir. He could work as a crossing guard or a flagger. They're about 61,000 of those in the national economy, and about a little more than 1,000 in the region.

Q  Could you tell me what the region is?

A  The region is Virginia, West Virginia. He could work as a kitchen worker. About 340,000 of those in the national economy; not quite 10,500 within the West Virginia-Virginia region. He could work as a janitor/cleaner. About 175,000 of those in the national economy; about 8,800 of those within the Virginia-West Virginia region. Those are light, unskilled jobs.

Q  Okay. Is there anything in your testimony that conflicts with the Dictionary of Occupational Titles?

A  No, sir. Not that I'm aware of.

E.  <u>Lifestyle Evidence</u>

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect his daily life.

- Mows the yard. (Tr. 507).
- Watches television. (Tr. 507).
- Fixes his meals. (Tr. 507).
- Washes dishes. (Tr. 508).
- Visits friends. (Tr. 510).
- Does laundry. (Tr. 510).
- Able to lift 50 to 100 pounds. (Tr. 511).
- Claimant is 5' 2" tall and weights 110 pounds. (Tr. 511).
- Used to have a drinking problem. (Tr. 512).

- Still drinks a six-pack now and then. (Tr. 512).

- Uses marijuana. (Tr. 512).

**II.    The Motions for Summary Judgment**

A.    Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ erred by failing to consider the entire record.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ properly relied on the record.

B.    The Standards.

1.    Summary Judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.    Judicial Review. Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.    Social Security - Medically Determinable Impairment - Burden. Claimant bears the

burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

    4.      Social Security - Medically Determinable Impairment. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

    5.      Disability Prior to Expiration of Insured Status- Burden. In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

    6.      Social Security - Standard of Review. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

    7.  Social Security - Scope of Review - Weight Given to Relevant Evidence. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8. <u>Social Security - Substantial Evidence - Defined</u>. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. <u>Social Security - Sequential Analysis</u>. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past

C. <u>Discussion</u>

### 1. Evidence not in the record

Claimant raises two issues. First, did the ALJ consider evidence not in the record? Second, if the ALJ did consider evidence not in the record, does that require a remand? Commissioner responds that the ALJ did not consider evidence not in the record and accordingly no remand is required.

Claimant notes the ALJ's citing Dr. Bell's report "[t]he undersigned has also considered Sunny Bell's diagnosis of borderline intellectual functioning which is based on a 1992 psychological examination by Thomas Andrews, Ph.D., in which the claimant received a verbal IQ score of 73, a performance IQ score of 78, and full scale IQ score of 74. Although Ms. Bell also administered IQ testing, she describes her testing as invalid due to lack of motivation of the claimant." (Claimant's

10

Brief page 3 citing Tr. 20). Claimant then notes that Dr. Bell's report continues to cite Dr. Andrews' December 4, 1992 psychological examination. Claimant then asserts that while Dr. Bell references Dr. Andrews' December 4, 1992 report often, the December 4, 1992 report is not in the record. However, Dr. Andrews December 4, 1992 report is in fact in the record. Dr. Andrews' December 4, 1992 psychological evaluation can be found in the transcript from page 265 through page 275. (Tr. 265-75). Therefore, the ALJ did not consider evidence not in the record. Dr. Andrews' evaluation was in the record.

At the end of his argument Claimant proposes that "either Sunny Bell's opinion/recommendation must be accepted and the presiding ALJ must find that plaintiff suffers from borderline intellectual functioning. And in this case, the presiding ALJ did not make such a finding. (Transcript p. 22-23). Or, in the alternative, the presiding ALJ had a duty if he wished to discredit Sunny Bell's finding, he needed the entire report of Thomas Andrews from 1992, which as stated earlier is not in the transcript. Since that 1992 report is not in the transcript, not did the presiding ALJ find the plaintiff had borderline intellectual functioning, it is permissible and reasonable to ask for a remand." (Claimant's Brief page 5). In response to the first part of Claimant's proposal the ALJ did in fact find that Claimant suffers from borderline intellectual functioning. (Tr. 22). "The evidence supports a finding that the claimant has alcohol dependence and *borderline intellectual functioning*. . . ." (Tr. 22). In response to the second part of Claimant's proposal, as was discussed above Dr. Andrews' opinion is in fact in the transcript. (Tr. 265-75).

The ALJ based his opinion precisely on all the evidence in the record and fully and succinctly found Claimant not disabled. Accordingly, a remand is not required.

11

**IV. Recommendation**

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and Commissioner's Motion for Summary Judgment be GRANTED. The ALJ was substantially justified in his decision. Specifically, the ALJ did not consider evidence outside the record and, therefore, a remand is not required.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear *pro se* and any counsel of record, as applicable.

DATED: May 4, 2005

/s/ James E. Seibert

JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE